**SHAKESPEARE COMPANY**

v.

**The UNITED STATES.**

No. 448–65.

United States Court of Claims.

Jan. 19, 1968.

Michael M. Doyle, Washington, D. C., for plaintiff, George D. Webster, Washington, D. C., attorney of record.

Mitchell Rogovin, Asst. Atty. Gen., for defendant. Edward B. Greensfelder, Jr. and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

ON DEFENDANT'S REQUEST FOR REVIEW OF COMMISSIONER'S ORDER

LARAMORE, Judge.

Plaintiff, Shakespeare Company, is a manufacturer of fishing tackle which was subject to tax under section 4161 of the Internal Revenue Code of 1954 on sales of its products at the rate of 10 percent of the price for which such taxable articles were sold. It sells all of its products to volume purchasers which resell to others. It sold its own "Shakespeare" brand name fishing reels at approximately 55 percent off list price. The evidence established that a number of such sales were made to companies having warehouses which sold to retail stores from catalogues and through outside traveling salesmen. It also sold fishing reels to South Bend Fishing Tackle Company (for resale under the South Bend label), at approximately 70 percent off list price.

Section 4216(b)(2) of the 1954 Code, for the period in suit, provided a special constructive sales price rule for manufacturers (otherwise qualifying for its use) which sell to retailers and to one or more wholesale distributors. The special rule is that the manufacturers' excise tax on a taxable article shall be computed on the lesser of (1) the price for which such article is sold or (2) the highest price for which the same article is sold by the manufacturer to wholesale distributors. The Internal Revenue Service computed plaintiff's tax liability here

in issue by using as the tax base prices equivalent to 55 percent off list, because this was both the actual price and the price at which it sold to wholesale distributors.[1]

Trial was scheduled in Chicago for June 5, 1967. On June 2, 1967, plaintiff caused to be served upon Bernard H. Fischgrund, Chief Excise Tax Branch, Internal Revenue Service, a subpoena duces tecum, requesting his appearance to testify and to bring with him copies of all private rulings and letter rulings issued by the National Office of the Internal Revenue Service since August, 1954, in respect to the following:

1. Determinations under Sections 4216(b), 4216(b)(1), and 4216(b)(2) 1954 Code, and Treas.Reg., Sec. 148.-1-5(b) and Treas.Reg., Sec. 316.15(b) as to applicable constructive sales prices resulting from sales in the ordinary course of trade or sales to wholesale distributors; and

2. Determinations as to the existence of a wholesale distributor or distributors of wholesale sales within the meaning of Treas.Reg., Sec. 148.1-5 (b) and Treas.Reg., Sec. 316.15(b) or any predecessor regulations.

At the close of trial the trial commissioner ordered Mr. Fischgrund to appear and testify in Washington, D. C., at a time to be subsequently arranged.

The government contends that a substantial number of the purchasers of plaintiff's "Shakespeare" brand reels at 55 percent off list (those which resold to retailers), were "wholesale distributors," and that the sales prices to them were the highest prices at which such articles were sold by plaintiff to wholesale distributors. The plaintiff contends that none of those which purchased at 55 percent off list price were "wholesale distributors" and, therefore, the only prices to a wholesale distributor (70 percent off list) were those at which it sold to South Bend.

1. Since the actual prices on sales to South Bend (70 percent off list) were less than the highest price at which plaintiff sold to other wholesale distributors, in such instances the Service only taxed the sales at the actual prices.

Thus, says the government, the issue is whether any of the purchasers which purchased at 55 percent off list price were "wholesale distributors" within the meaning of the statute.

Plaintiff contends that it is entitled to have the special rule of section 4216(b) (2) applied to it. It further contends that the evidence shows that Shakespeare regularly sells its fishing tackle to retailers, at 55 percent off list price, and also regularly sells the same tackle to one wholesale distributor, South Bend, at 70 percent off list price. Plaintiff contends further that the evidence showed that the normal method of sales for fishing tackle in the industry is not to sell at retail or to retailers, and that Shakespeare's sales to South Bend were, and are, arms-length transactions.

The instant case arises on defendant's request for a review of the commissioner's order relative to its motion under rule 51(c) to quash, or in the alternative to modify, the subpoena duces tecum served on Mr. Fischgrund.

The order of Commissioner James F. Davis regarding defendant's motion to quash, or in the alternative to modify, reads as follows:

On June 2, 1967, plaintiff served a subpoena duces tecum on Bernard H. Fischgrund, Chief, Excise Tax Branch, Miscellaneous Tax Division, Office of the Assistant Commissioner, Technical, Internal Revenue Service, to appear in Chicago, Illinois, on June 6, 1967, or, in Washington, D. C., at such other time as may be convenient with the court. At the trial in Chicago on June 5 to 8, 1967, it was agreed by the parties and approved by the Commissioner, to defer taking the testimony of Mr. Fischgrund.[1]

1. The subpoena did not comply with Rule 51(b) (1) nor was it served on Mr. Fischgrund personally. Government counsel noted this at the trial in Chicago but raises neither point in his motion to quash.

Defendant, on July 10, 1967, filed a motion under Rule 51(c) to quash, or

in the alternative to modify, the subpoena duces tecum on the grounds that it is "unreasonable and oppressive." Plaintiff filed a brief in response to defendant's motion. The documents called for in the subpoena are:

Copies of all private rulings and letter rulings issued by the National Office of the Internal Revenue Service since August, 1954, in respect to the following:

1. Determinations under Sections 4216(b), 4216(b)(1) and 4216(b)(2) and Treas.Reg. 148.1–5(b) and Treas. Reg. Sec. 316.15(b) as to applicable constructive sales prices resulting from sales in the ordinary course of trade or sales to wholesale distributors, and

2. Determinations as to the existence of a wholesale distributor or distributors of wholesale sales within the meaning of Treas.Reg. 148.1–5(b) and Treas.Reg. Sec. 316.15(b) or any predecessor regulations.

Defendant included with its motion the affidavit of Mr. Fischgrund, setting forth IRS procedures for rendering and cataloguing letter rulings to taxpayers. The affidavit states that some letter rulings are published, others are filed in a so-called "Precedent File" and others are filed in a "Non-Precedent File." The precedent file is classified and digested by IRS Code Sections. The non-precedent file is maintained chronologically and alphabetically by names of the taxpayers. The affidavit also states it would take approximately 2 weeks for a tax law specialist in the International Revenue Service to search and identify the documents in the precedent file and 3 to 6 months for the non-precedent file. Defendant therefore considers plaintiff's subpoena "unreasonable and oppressive." In the alternative, defendant moves that the subpoena be modified to require production only of the precedent rulings issued under Section 4216(b)(2), 1954 Code, as to applicable constructive sales prices resulting from sales to wholesale dis-

tributors. Defendant argues that Section 4216(b)(1) is irrelevant to this case since plaintiff's counsel admitted at trial that plaintiff sells no goods "at retail" but only "to retailers."

An informal conference was held August 8, 1967, with counsel for the parties, to discuss the motion and a suitable order. In view of the matters discussed at the conference and the briefs of the parties, IT IS HEREBY ORDERED THAT:

1. (a) Defendant shall make available for inspection and copying by plaintiff all letter rulings since 1954 in the precedent file, classified and digested under Section 4216(b)(2) of the Internal Revenue Code of 1954, at a time and place to be mutually agreed upon by the parties, but not later than August 29, 1967;

(b) In any copies made of the documents noted in 1.(a) above, the names of persons, corporations or other identifying details shall be deleted;

(c) This order, with respect to paragraphs 1.(a) and (b) above, shall be deemed an order made for discovery under Rule 40.

2. (a) Defendant shall make available for inspection and copying by plaintiff (i) all letter rulings since 1954 in the precedent file, classified and digested under Section 4216(b)(1), and (ii) all letter rulings since January 1, 1959, in the non-precedent file which relate to determinations under Section 4216(b), 4216(b)(1), and 4216(b)(2), and Treasury Regulation Sec. 148.1–5(b) and Treasury Regulation Sec. 316.15(b) as to applicable constructive sales prices resulting from sales in the ordinary course of trade or sales to wholesale distributors, and determinations as to the existence of a wholesale distributor or distributors of wholesale sales within the meaning of Treasury Regulation Sec. 148.1–5(b) and Treasury Regulation Sec. 316.15 (b) or any predecessor regulations;

(b) Plaintiff shall pay the reasonable cost, including searching time, of producing the documents named in paragraph 2.(a) hereof;

(c) Compliance with paragraph 2.(a) hereof shall be at a time and place mutually to be arranged by the parties and approved by the commissioner after the taking of testimony of Bernard H. Fischgrund as ordered in paragraph 3. below; and

(d) This order, with respect to paragraphs 2.(a), (b) and (c) above, shall be deemed an order made for discovery under Rule 40.

3. Bernard H. Fischgrund shall comply with the subpoena issued June 2, 1967, and appear as a witness in the trial of this cause at 10:00 a.m., Friday, September 8, 1967, United States Court of Claims, 717 Madison Place, N.W., Washington, D. C. The documents listed on the sheet attached to the subpoena need not be brought to the trial.

For the purposes of review by the court in the event of dissatisfaction by either party, this order is deemed filed under Rule 55(a).

Since the argument before the court in this case, on November 2, 1967, plaintiff has written the court to the effect that it agrees to waive the portion of the trial commissioner's order which relates to the production by defendant of non-precedent rulings.

The subpoena which defendant seeks here to quash contains no statement of materiality other than the general statement in its attachment to the subpoena. However, the trial commissioner's order shows that his ruling shall be deemed an order made for discovery under rule 40.[2]

2. Plaintiff's attempt to obtain production under rule 51(c) (Subpoena for Production of Documentary Evidence) was allowed as a motion under rule 40 (Motion to Produce). The explicit good cause and relevancy requirements of rule 40 are no less applicable to production sought under rule 51. See Kamen Soap Products Company, Inc. v. United States, 110 F.Supp. 430, 442, 124 Ct.Cl. 519, 541 (1953). The basic difference between a rule 40(a) motion and a subpoena duces

Rule 40 provides, among other things, that:

(a) Order to Produce: Upon motion (in compliance with Rule 11) of any party *showing good cause* therefor and upon notice to all other parties, * * *. [Emphasis supplied.]

Rule 40(a)(1) provides further that the document sought must be shown to be "relevant to the subject matter involved in the pending action."

Rule 40(b) provides:

(b) Relation to Admissible Evidence: It is not a ground for objection to the motion that the evidence will be inadmissible at the trial if the evidence sought *appears reasonably calculated to lead to the discovery of admissible evidence.* [Emphasis supplied.]

■ There is, and can be, no contention that the use of a subpoena duces tecum does not apply to the government in a case such as this. Kamen Soap Products Company, Inc. v. United States, 110 F.Supp. 430, 442, 124 Ct.Cl. 519, 541 (1953).

■ If a proper showing is made of good cause we do not hesitate to order production either on motion for discovery or by subpoena process. However, as we stated earlier, the subpoena process is in the nature of a discovery and thus must meet the discovery standards. In other words, something more than a fishing expedition must be shown.

The affidavit of Bernard H. Fischgrund, referred to previously, discloses:

6. To the best of my knowledge and available information, since 1954, approximately 10,000 precedent rulings and 30,000 non-precedent rulings have been issued relating to excise tax matters under the jurisdiction of Excise Tax Branch. * * * In my judgment it is estimated [that] it would require an employee identified as a "tax law specialist" with sufficient background and experience and technical competency of the subject matter involved in constructive selling price determinations under the applicable provisions of the Internal Revenue Code and Regulations, approximately 2 weeks in respect of the precedent file * * * to conduct the necessary search to identify whatever rulings might be lodged in such files which are the subject of the subpoena duces tecum.

■ Thus, it must appear that the documents sought are material, or probably material, to the issues. Kamen Soap Products Company, Inc. v. United States, supra.

■ Furthermore, plaintiff must identify the rulings with sufficient particularity so that their extraction from the files may reasonably be made by the employee responsible for them. This court, in Robinson v. United States, 48 Ct.Cl. 454, 459 (1913), said:

The call must appear with sufficient particularity to enable an intelligent clerk in the ordinary discharge of his duties to find the record and copy it. The responsibility of determining what is relevant, or of finding documentary matter specifically called for can not be thrown on the officers of a department.

Again, in Young & Rubicam, Inc. v. United States, Ct.Cl. Nos. 135–64 and 59–65, there was filed on March 21, 1966, an order which provided in part:

As to the records sought in paragraphs 1, 2 and 3, the defendant's motion is denied, without prejudice, for the reason that the defendant has not identified the documents and things with reasonable particularity to the extent that each such document or thing is identified so that its extraction from the files or other method of identification or procurement may easily be made by the officer or employee responsible for the records.

See 4 Moore, Federal Practice, 2d Ed., ¶ 26.10, pp. 1127–1135.

tecum under rule 51(c) is the party who must take the initiative in supporting or protesting the request for documents.

Mr. Fischgrund's affidavit previously referred to states unequivocally that it would require an employee identified as a "tax law specialist" with sufficient background and experience and technical competency of the subject matter involved approximately two weeks to conduct the necessary search to identify whatever rulings might be lodged in such files which are subject to the subpoena duces tecum. Plaintiff has proffered no reason for dispensing with, or alleviating, the requirement of proper identification, such as that the government has admitted a consistent course of private rulings inconsistent with the position taken in plaintiff's instance.

■ We can find nothing in the record before us to indicate either good cause, relevancy, or that the documents sought appear reasonably calculated to lead to the discovery of admissible evidence, as required by the rules, other than the statement by plaintiff in the attachment to the subpoena previously referred to that the rulings sought are relevant. Nor is there a showing that the documents sought are material to the issues as is required by this court's ruling in Kamen Soap Products Company, Inc. v. United States, supra. We say this in particular because (1) if any letter rulings were contrary to the application of the law, they obviously could not estop the government from correcting them even with respect to the same taxpayer (Dixon v. United States, 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957)), and (2) even though a taxpayer receiving a private ruling issued by the National Office of the Internal Revenue Service might be entitled to rely upon it until revoked, no court has held a private ruling binding on the government as against other taxpayers. See Bornstein v. United States, 345 F.2d 558, 170 Ct.Cl. 576 (1965); Knetsch v. United States, 348 F.2d 932, 172 Ct.Cl. 378 (1965), cert. denied, 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966);

Bookwalter v. Brecklein, 357 F.2d 78 (8th Cir. 1966).

■ Plaintiff generally alleges that its position is supported by the letter rulings it seeks to examine. True, in some instances, under the particular facts therein, the court has held that a taxpayer who has made a request for a ruling, or one who has been subject to a general ruling under the Internal Revenue Code of 1954, is entitled to the benefit of non-retroactive treatment where other taxpayers similarly situated have been granted non-retroactive treatment by a ruling. International Business Machines Corporation v. United States, 343 F.2d 914, 170 Ct.Cl. 357 (1965), cert. denied, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966); Connecticut Railway and Lighting Co. v. United States, 142 F.Supp. 907, 135 Ct.Cl. 650 (1956); Exchange Parts Company, Inc. v. United States, 279 F.2d 251, 150 Ct.Cl. 538 (1960). But here there is no showing which, if any, of its competitors have received rulings giving them treatment other than that accorded plaintiff. As a matter of fact, plaintiff has not shown that it ever requested a ruling. Cf. Van Norman Industries, Inc. v. United States, 361 F.2d 992, 999, 176 Ct.Cl. 16, 28 (1966), cert. denied, 386 U.S. 981, 87 S.Ct. 1285, 18 L.Ed.2d 229 (1967). Moreover, plaintiff does not give any reason for believing that the Service has taken, in its private rulings, any position contrary to, or inconsistent with, the stand it has taken against plaintiff.

Plaintiff on brief says:

In this case, *should* the rulings sought show that consistently the Government has interpreted the sections here in issue as plaintiff has contended, then this fact would be particularly significant to the achievement in this case of the Congressional desire "of imposing manufacturers excise taxes on a uniform base." H.Rep. No. 481, 85th Cong., 1st Sess., 1958–3 Cum.Bull. 372 at 392. [Emphasis supplied.]

It is noteworthy that plaintiff uses the word "should" rather than make a posi-

tive statement of government interpretation. This convinces us that the plaintiff merely wants to discover *if* there are letter rulings inconsistent with the government's defense. As we previously stated, this is not enough. As a matter of fact, plaintiff's reply brief is replete with "ifs" rather than a showing of relevancy and materiality.

Plaintiff makes the further argument that the decisions of this court in Thermo King Corporation v. United States, 354 F.2d 242, 173 Ct.Cl. 860 (1965) and U. S. Thermo Control Co. v. United States, 372 F.2d 964, 178 Ct.Cl. 561 (1967), support the request made in its subpoena duces tecum.

True, the government in at least the *U. S. Thermo Control Co.* case introduced into evidence private rulings. However, that is not our problem here. We are concerned only with the question of whether plaintiff has sufficiently identified the documents sought and whether it has shown "good cause" for production, not whether such rulings, once voluntarily produced, may be considered. The question of their introduction into evidence and the weight to be given them if received in evidence is for further action.

The court is not holding that the requirements for production under Rule 40 are the same as those under Rules 39 and 51, but is holding that the plaintiff has not met the requirements of Rule 40.

Finally plaintiff argues that the Freedom of Information Act, 80 Stat. 250, 5 U.S.C. App. 1002, gives it the right to the documents sought.

The short answer to this contention is that we can find nothing in the above act which would entitle this plaintiff to engage in a hunt for something which *might* aid it in this action any more than it could within the subpoena or discovery processes. Furthermore, even if inspection could be had under the Freedom of Information Act, supra, the same rules as to identification of the particular documents sought, as well as materiality, we believe should be adhered to.

For the above reasons we reverse the trial commissioner's order and hold that the government's motion to quash the subpoena duces tecum be granted.